Case 3:18-cv-08242-SPL-ESW   Document 13   Filed 07/24/19   Page 1 of 16

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE 5.4
            (Rule Number/Section)

FILED _____ LODGED _____
RECEIVED _____ COPY _____
JUL 2 4 2019
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Richard Mercado #270031
Name and Prisoner/Booking Number

ASPC Kingman / Huachuca unit 3C44
Place of Confinement

Po Box 6639
Mailing Address

Kingman, Arizona 86402
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Richard Mercado
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Stephanie Herrick
(Full Name of Defendant)

(2) Correct Care Solutions / WellPath

(3) Charles Ryan

(4) _____

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CV-18-8242-PHX-SPL-ESW by hla

CASE NO. CV-18-08242-PCT-SPL (BSB)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☐ First Amended Complaint
■ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ■ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ■ Other: US Constitutional Amendments VIII, XIV, Aris. Rev. Stat. § 1-201

2. Institution/city where violation occurred: ASPC Kingman/Huachuca unit, Kingman Arizona

## B. DEFENDANTS

1. Name of first Defendant: __WellPath (Correct Care Solutions)__. The first Defendant is employed as: __Inmate Health Care Contractor/provider__ at __Huachuca unit, ASPC Kingman__.
   (Position and Title) (Institution)

2. Name of second Defendant: __Stephanie Herrick__. The second Defendant is employed as: as: __Nurse Practitioner, employed by WellPath (CCS)__ at __Huachuca unit, ASPC Kingman__.
   (Position and Title) (Institution)

3. Name of third Defendant: __Charles Ryan ("ADOC Director")__. The third Defendant is employed as: __Director__ at __Arizona Department of Corrections (ADOC)__.
   (Position and Title) (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as: _____ at _____.
   (Position and Title) (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☐ Yes   ■ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: Guarantee against cruel and unusual punishment under the VIII and XIV Amendments U.S. Constitution.

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: ____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   From January 1, 2014 through December 14, 2015, Richard Mercado DOC#270031 was in ADC custody at the Red Rock Correctional Center (Red Rock). On November 3, 2014, Richard Mercado (Mercado) was admitted to the Banner Casa Grande Medical Center, the following history and physical authored that day by attending physician Dr. Ali Eskander related that Mercado presented with "acute renal failure and small bowel obstruction" along with "[m]ultiple innumerable hepatic cysts and few renal cortical cysts and noted quite numerous for this patients' young age [of 26]. Questionable polycystic kidney disease". On November 4, 2014, Mercado underwent bowel obstruction surgery, and the final written report concerning Mercado's care written that day by Dr. Oliver Shelksohm included a definite diagnosis of "[p]olycystic liver and kidney disease." On November 12, 2014, Mercado was transported to receive an urgent follow-up consultation, the resulting report stated, inter alia: "May have double portions [of] food & also [a] high fiber diet". Mercado developed post-surgical constipation on or about December 1, 2014. Mercado was transported for an examination on December 16, 2014, by Dr. Kazi Nadeem who produced a written progress note that related Mercado's account of his recovery: "He did well until 2 weeks ago, [Mercado has] developed] constipation with abdominal cramps. He has to force defecate, and has tried [ ] high fiber supplement with no relief". Dr. Nadeem responded by prescribing Miralax

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   1. The unnecessary and wanton infliction of pain brought on by a preventable surgery.
   2. Psychological anguish and pain.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ____

3. The nurse practitioner acted under color of state law. ARS § 31-201.01(D)
CCS/WellPath acted under color of state law ARS § 31-201.01(D)

a polyethelene-glycol-based medication, which Mercado was to take daily. Dr. Nadeen's prescription can not be interpreted as a long-term solution for Mercado's chronic constipation. The warning label for Miralax dictates otherwise; "Also do not use this medication for more than 2 weeks... Extended use or overuse may result in dependence on laxatives and chronic constipation." The warning label also carries the following caution noteworthy due to Mercado's polycystic kidney disease: "Before using this medication, tell your doctor or pharmacist your medical history, especially of ... kidney disease." Finally, the warning label provides a suggestion regarding the prevention of constipation; "To prevent constipation, remember to exercise regularly, drink adequate fluids, and eat fiber-rich foods such as bran, whole grain, fresh fruits, and vegetables." On June 3, 2015, Red Rock Medical Provider Roy Montgomery, P.A. ("Montgomery") saw Mercado in connection with "[h]istory of polycystic kidney disease and acute... kidney disease." When the subject of nutrition was broached, Montgomery counseled Mercado to "lower sugar carbohydrate intake, eat green leafy vegetables." This was an ironic piece of advice, for not only is the general inmate menu littered with sugar and other empty carbohydrates, it contains almost no dark-green leafy vegetables. Mercado presented to medical at Red Rock the close family history of how his mother died after losing her battle with metastatic liver cancer. This close family medical history coupled with his own chronic medical history, caused Mercado great concern, after doing his own research discovered that, "chronic constipation may be an early symptom of serious problems such as colon cancer." Mercado being proactive about his health given the combined family medical history, requested, and was granted permission from Red Rock medical staff to research, and create a six week cycle menu for a high-fiber diet, that the 2 doctors stated was required for his chronic medical diagnosis. The first problem Mercado faced was that, ADC doe not offer a standardized high-fiber diet, therefore, the diet would need to be created from scratch. Second, under ADC policies, if a Medical Provider seeks to order a diet that is "not already approved in the Diet Manual", "[t]he ordering provider will forward a request... to the Medical Program Manager" that includes a "[d]escription of the desired diet", and that the new diet would have an "attractive cost profile", and finily extensive medical documentation justifying the reason to create the diet. This is the ADC ossified bureaucracy that

(3-2)

Dr. Olsen would navigate through, and the overwhelming evidence necessary to justify approval proposed diet to the Medical Program Manager. After researching all the available information on Red Rock unit and from information sent in from outside the prison, Mercado and his inmate associate crafted an Inmate Letter addressed to Dr. Olsen, that, within the attached report there was more then 150 pages of text and attachments, 1) relevant portions of the guidelines, 2) an excerpt from the medical record of Mercado's mother, which explicitly describes her terminal diagnosis, 3) copies of the Internet material referenced, 4) Montgomery's progress notes, 5) copies of the aspartame-related literature, 6) Breakdowns of both the proposed high-fiber diet and the current general inmate menu that laid out how each one compared to the daily and weekly recommended intakes of the USDA Food Patterns at the 2800 calorie level.

On December 8, 2015, Mercado was ready to present his completed report and Inmate letter to Dr. Olsen. Unfortunately, this was not possible, because, Red Rock unit was under hard lockdown in preparation for the mass tranfer of prisoners to Huachuca unit, Kingman complex. On the morning of December 15, 2015, not long before he left housing unit to be transferred, Mercado delivered the Inmate and report to a Red Rock nurse for placement into his medical file with the assumption that it would be acted upon by the medical staff of CCS, (now known as WellPath), after his arrival at Huachuca unit.

The aforementioned medical information was part of Mercado's perment ADC medical file, which was transfered to Huachuca unit, and these medical files/records of Mercado's preexisting chronic medical condition was available for review, had CCS/WellPath staff taken the time to review Mercado's Medical files. Currect Care Solutions/WellPath, (CCS/WellPath) has a established history of practices, policy, and customs of permitting its medical staffs failure to review records for preexisting conditions, canceling medication without cause or replacement, deviating from sound medical practice and delay necessary medical treatment of inmates under there medical care.

(3-3)

On December 17, 2015, Mercado submitted an HNR to CCS/WellPath making the following request: "I would like to talk with a (Dr. or MD) regarding a Diet Plan to help relief [sic] with my Chronic Constipation." CCS/WellPath LPN Perkins responded to the HNR "There is not a diet plan for constipation. Increase your water intake re HNR if you are in need of alternative relief options.

On December 24, 2015, Mercado sent the following follow-up request to CCS/WellPath: "I would like to talk with a Dr. about a Diet, regarding my past medical history of bowel obstruction." CCS/WellPath nurse T. Gigandet, responded on December 28, 2015, by scheduling Mercado to be seen by the Nurse Practitioner.

Mercado received notice that he would be seen by the Nurse practitioner on January 22, 2016. Out of an abundance of caution, Mercado presented the Nurse practitioner with a copy of the Inmate Letter he had addressed Dr. Olsen - but with the date of the visit changed and the name of the recipient left blank—and briefly explained the rationale behind it. The Nurse practitioner accepted the Inmate Letter, wrote her name in the area designated for recipient, and proceeded to skim through its contents. The Nurse practitioner gave Mercado's proposed high-fiber diet tentative approval within her verbal response, and closed by assuring Mercado she would contact "the dietitian" and follow up with him within two weeks. When the Nurse practitioner's time frame lapsed, Mercado submitted a follow-up HNR on February 10, 2016. CCS/WellPath nurse Perkins issued a response dated February 11, 2016, that directed Mercado to effectively be patient because he "will be informed soon" regarding the issue.

On March 14, 2016, Mercado submitted an HNR to the Nurse practitioner seeking an update on his diet, and closed with the following: Thank you for you[r] time[,] I am worried." On March 18, 2016, the Nurse Practitioner met with Mercado, and told him that she hope to have to have the issue resolved soon.

On the morning of March 18, 2016, before his appointment with the Nurse Practitioner late that same day, Mercado submitted an HNR that asked to speck with the Nurse Practitioner regarding his diet. CCS/WellPath nurse T. Gigandet scheduled Mercado to be seen by the Nurse Practitioner on April 5, 2016 according to the HNR response dated March 20, 2016

At some point in March 2016, Mercado submitted an HNR to CCS/WellPath in order to refill his his prescription for Miralax. On March 28, 2016, ~~CCS/WellPath~~'s pharmacy staff issued the following response: "No order for Miralax." On March 28, 2016, Mercado submitted an HNR to renew the prescription for Miralax. A Corporation nurse responded on March 29, 2016 by scheduling Mercado to be triaged by the nurse line, and added the following comment: "You have an old Rx from a previous facility. 'Miralax' is a non-formulary drug here."

On April 5, 2016, Mercado submitted an HNR requesting to be seen by the Nurse Practitioner regarding his diet, and closed by stating the obvious: "I have been waiting for a long time." The Nurse Practitioner met with Mercado on the same day, but provided Mercado with nothing to indicate that the issue had been completely resolved aside from the contention that a high-fiber diet had been approved.

The private prison staff that operates Huachuca Unit as agents of the ADC Director have a habit of rushing inmates to eat via two methods: (1) packing the dining halls to capacity while also adding prisoners to the serving line queue, thereby exerting internal pressure among the inmates themselves to compel each other to eat quickly so that the persons who are streaming in will have a place to sit and eat; and (2) once the last tray of a meal has been served, staff will normally give prisoners ten or fifteen minutes to finish their meal before ordering them to leave the dining halls. In view of the fact that any new high-fiber diet would include various hard raw vegetables (e.g., carrots, celery, etc.), this dining environment was certain to be problematic for Mercado for two related reasons. First and foremost, Mercado is missing so many teeth that he must be allowed to soften the raw vegetables by

cooking them in a microwave oven located inside his housing unit. Second, Mercado's digestive problems are aggravated if he is compelled to eat too fast using what teeth he has to chew with. At bottom, Mercado foresaw the need to be able to take part or all of each meal out of the dining hall and back to his housing unit – an act that is generally not permitted at ADC facilities, with the exception of sack lunches and select special circumstances not relevant here. This type of medical accomodation is available through the issuance of a Special Needs Order ("SNO") by the Corporation, for the SNO is an ADC form used by the ADC Director's health care contractors to prevent prison security and administration staff from interfering with the medically-necessary accomodation that is set forth within the SNO. With this in mind, Mercado submitted an HNR to the CCS/WellPath on April 7, 2016 requesting the issuance of "a SNO stating that I can take out from the kitchen to my housing, my fresh fruit and vegetables [that will be part of the new high-fiber diet] for I can make soups out of it." CCS/WellPath nursing administrator E. Brown, R.N, A.D.O.N. issued the following response on April 8, 2016: "This is not something medical can issue a SNO for." This statement was a falsehood, for Mercado later obtained such a SNO without any security-related problems connected to this medically-necessary accomodation.

    As April 2016 began, Mercado was no longer able to regularly move his bowels, and when he did, it was a very painful experience. Since these symptoms were eerily reminiscent of his prior bowel obstruction, there was an urgent need to resolve this issue immediately before it was too late. Therefore, Mercado submitted an HNR to the CCS/WellPath on April 8, 2016 begging its staff to speak to the staff of ADC's food service contractor

Trinity Services Group ("Trinity") in order to ensure that the service of his diet will not be delayed post-approval by the normal bureaucratic red tape. The emergent need was highlighted by the HNR's closing language: "So this is very important, because my life depens [sic] on it. Can you please Scheduled me to see NP Herrick, Soon as you can." On April 9, 2016, CCS/wellPath's staff responded: "Received HNR/ Scheduled for chart review." On April 11, 2016, Mercado sent the CCS/wellPath an HNR that repeated the request made within his April 8, 2016 HNR. CCS/wellPath staff issued the following response dated April 12, 2016: "You have been scheduled to see NP Herrick." On April 12, 2016, Mercado sent the following HNR to CCS/wellPath: "Yesterday, I got back my HNR saying 'You have been Scheduled to se [sic] NP Herrick[.]' Can you please tell me what date I am [sic] going to see NP Herrick?" On April 13, 2016, a CCS/wellPath nurse replied: "Received HNR / You will receive a pass for scheduled appointment."

Mercado proceeded to submit follow-up HNRs to the CCS/wellPath bearing the following dates regarding his chronic constipation and the need for a therapudic diet: April 18, 2016, April 20, 2016, and May 12, 2016. The Nurse Practitioner responded via an ADC Heath Services - Communique dated June 14, 2016 that told Mercado that "your Low Residue diet has been approved." Appalled, Mercado sent CCS/wellPath HNRs dated June 21, 2016 and July 1, 2016, which stated that (1) he was constipated; (2) his stool was hard and bloody; and (3) he needed a high-fiber therapudic diet.

On July 8, 2016, Mercado was transported to have his abdomen imaged, which revealed that he was constipated.

On August 2, 2016 Mercado sent CCS/wellPath an HNR that stated, in relevant part: "Hi, I have been Scheduled over a month to see N.P. Herrick regarding (1) my medical shoes, (2) what's going on with my High Fiber Diet." CCS/wellPath nurse E. Jones returned the HNR with the following message dated August 3, 2016: "Please use this form to describe only one problem or issue at a time."

On August 4, 2016, Mercado was admitted to the Kingman Regional Medical Center to undergo bowel obstruction surgery, and was discharged on August 8, 2016.

After being returned to Huachuca Unit, Mercado did his best to obtain a therapudic diet to prevent a third bowel obstruction, but his efforts were in vain. Consequently, Mercado elected to start the grievance process by submitting a written complaint on September 7, 2016, which complained that, despite his presentation of a proposed high-fiber diet, the actions of the CCS/wellpath and the Nurse Practitioner led him to suffer the agony of a second bowel obstruction surgery, and he was at that time left with no therapudic diet at all.

On September 12, 2016, Mercado had his written complaint responded to, which informed him that an alternative high-fiber diet (i.e. not the diet proposed by Mercado) had been approved. Mercado proceeded to exhaust administrative remedies anyway. (Doc. 1 at 26-27)

Under common law, the exclusive franchise given to the CCS/wellpath by the State to provide health care to Mercado and all other Huachuca Unit prisoners required that it give adequate rendition to Mercado in connection with the treatment and care for his serious medical needs. A.R.S. §§ 1-201, 31-201.01. CCS/wellpath has refused to discharge its duty to serve, for by its policies and customs, CCS/wellpath subjected Mercado to serious harm and injury by inadequate health care. The CCS/wellpath failed to adequately screen and qualify its personnel for employment, and also failed to to train Huachuca Unit health unit staff - including the Nurse Practitioner - regarding what procedures are and are not permitted in connection with the care of serious medical needs. To make matters worse, CCS/wellpath's supervisory staff do not investigate the reported misconduct committed by their subordinates, thereby ignoring the need for training and allowing the continuation of the very conduct that further violated Mercado's legal rights secured by the United States Constitution under the eighth Amendment. CCS/wellpath has been and is aware of all of the deprivations complained of in Count I, and has condoned such conduct.

By its policies and customs, CCS/wellPath subjected Mercado to serious harm and injury by inadequate health care provided under the color of state law. A.R.S. § 31-201.01. CCS/wellPath failed to adequately screen and qualify its personnel for employment, and also failed to train Huachuca Unit health unit staff - including the Nurse Practitioner - regarding what procedures are and are not permitted in connection with the care of serious medical needs. To make matters worse, the CCS/wellPath's supervisory staff do not investigate the reported misconduct committed by their subordinates, thereby ignoring the need for training and allowing the continuation of the very conduct that further violated Mercado's legal rights secured by the United States Constitution under the Eighth Amendment. CCS/wellPath has been and is aware of all of the deprivations complained of in Count I, and has condoned or been deliberately indifferent to such conduct.

Under common law, the exclusive franchise given to the Nurse Practitioner by the State to provide health care to Mercado and other Huachuca Unit prisoners under the color of state law (by way of a contract between ADC and her employer, CCS/wellPath) required that she give adequate rendition to Mercado in the care of his serious medical needs. In the months after his arrival at Huachuca Unit, Mercado repeatedly gave the Nurse Practitioner actual and constructive notice that his chronic constipation placed upon her the obligation to give him an appropriate therapudic diet in order to treat his condition. The Nurse Practitioner refused to do so. Instead, the Nurse Practitioner knowingly permitted the unnecessary and wanton infliction of continuous pain upon Mercado to escalate, ultimately climaxing when he he had to undergo a second bowel obstruction surgery and post-operative recovery, which violated his legal rights secured by the United States Constitution under the eighth Amendment. The Nurse Practitioner has been and is aware of all of the deprivations complained of in Count I.

In the months after his arrival at Huachuca Unit, Mercado repeatedly gave the Nurse Practitioner actual and constructive notice that his chronic constipation placed upon her the obligation to provide him with an appropriate therapudic diet in order to treat his

(349)

condition. The Nurse Practitioner, acting under the color of state law (by way of a contract between ADC and her employer, Corizon/Centurion), refused to do so. The Nurse Practitioner knowingly permitted the unnecessary and wanton infliction of pain upon Mercado to escalate, ultimately climaxing when he had no other choice but to undergo a second bowel obstruction surgery and post-operative recovery, which violated his legal rights secured by the United States Constitution under the Eighth Amendment. The Nurse Practitioner has been and is aware of all of the deprivations complained of in Count I, and acted with deliberate indifference to Mercado's serious medical needs.

## COUNT II

1. State the constitutional or other federal civil right that was violated: <u>Right to be free from cruel and unusual Punishment Guaranteed by eighth and fourteenth Amendments under U.S. constitution</u>.

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1) Plaintiff is, and at all times pertinent to this action was, a prisoner in the Arizona Department of corrections, Kingman complex, Huachuca unit, (Huachuca unit) at 4626 West English Drive, Golden Valley, Arizona 86401, PO Box 6639 Kingman Arizona 86402.

   2) Correct Care Solutions/Wellpath, failed to Adequately screen and qualify medical personal for employment, failed to properly train medical personal, fail to provide medical instruments necessary for treatment, and has developed a established history of Practices, Policy, customs of permitting it's medical staff to deviate from sound medical practice, failure to review medical records for preexisting conditions, canceling medication without cause or replacement, of inmates under there medical care.

   3) Medical staff on Huachuca unit routinely stop dispensing medication that was prescribed on another unit stating on Huachuca unit it is non-formulary or when medication was prescribed it will be delayed from being dispensed in some cases up to 12 weeks. This medication is not aspirin, but high blood pressure, Heart, and pain medications. If an inmate complains he is told that, if he doesn't stop complaining he will not get the medication or he will be issued a ticket. When medication is refill by HNR it can take up to 4 weeks to receive the medication. These delays in the end of 12 month period clearly shows that a medication that was order for 1 year will only dispense 10 months of medication. Medical staff on Huachuca unit routinely delay such procedures as colonoscopies by, delaying the inital consultation for months and then failing to prep the inmate for the colonoscopy, transporting an inmate off unit belly chained and shackled, only to be sent back to the unit to have the procedure reschuled, because

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   1) The unnecessary and wanton delay in treatment, which caused the infliction of pain brought on by a preventable surgery. 2) Psychological anguish and pain

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

   Correct Care Solution/Wellpath acted under color of State law ARS § 31-201.01(D)

(4-1)

CCS/Well Path medical staff failed to prep the inmate for the colonoscopy, starting the delaying process all over again. When an inmate refuses or signs a refusal to transport, because they were not prep'd for the colonoscopy, medical staff then shift the blaim to the inmate for the delay. The delay of medical treatment on Huachuca unit is well documented, hernia's that are ignored, in one case an inmate had a hernia protruding from his belly the size of a tennis ball, that to grieve medical to get treatment, another inmate who has a hernia in his groin that has grown so large that he can no longer work, and has been trying to get treatment since 2016, and though the hernia had been diagnosed on another unit, CCS/Well Path's, Dr. Schmidt stated, "the hernia did not exist and did not care if it was in the ADOC medical file", this in 2017. In another case this same Dr Schmidt used brute force, and a pair of scissors to remove a fiberglass cast, and unsterilized tweezer's and forcepts to remove surgical staples. Dr Schmidt was even laughing during this torturous cast/staple removal because of the amount of pain it was causing the inmate. This is a clear example of CCS/Well Path's failure to train, provide nesessary medical instruments, and screen personal for employment. Another inmate complaining of a respiratory problem, submitted numerous HNR's, had several X-ray's only to have medical staff treat him for a cold, TB and after six month's of failed treatment's, being seen at medical because he was coughing up blood, medical staff's treatment for this was going to be another round of cough syrup, it took the intervention of security staff ignoring the objections of medical staff to order an ambulance to transport the inmate to the Kingman hospital. Upon the inmates return it was learned the diagnoses from the hospital was that he had lung cancer, which had gone undiagnosed and untreated by CCS/Well Path's medical staff for six months.

 Correct Care Solution has a history of failing to adequately screen and qualify medical personal for employment, failed to properly train medical personal, failed to provide medical instruments necessary for the treatment of inmate needs under there care, and developed the custom of permitting its medical staff to delay and/or deviate from sound medical practice and procedures of the treatment and medical care of inmate. Which was the direct cause of Mercado delay of treatment and unncessary pain of a preventable surgery.

## COUNT III

1. State the constitutional or other federal civil right that was violated: <u>Freedom from cruel and unusual punishment guaranteed by the VIII and XIV amendments U.S. Constitution.</u>

2. **Count III.** Identify the issue involved. Check only one. State additional issues in separate counts.
   ☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
   ☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
   ☐ Excessive force by an officer ☐ Threat to safety ☒ Other: <u>General population diet/Adequate Nutrition</u>

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
   <u>When Director Ryan issued the general population diet its cost benefits may have seemed beneficial to ADOC. But the cost savings to ADOC have been far outweighed by the cost expenditures in medical costs to care for the inmates. Since the issuance of the General population diet (GP diet) there has been an alarming rise in inmate health related issues that are directly linked to the GP diet such as; heart problems, High blood pressure, Diabetes, Obesity, chronic constipation, bowel obstruction, and others. When inmates receive medical treatment for the aforementioned medical issues, the first order the medical providers tell the inmates is to cut the carbohydrates from their diet and to eat more fresh vegetables and fruit. The problem with this medical order is that the GP diet is 75% carbohydrates, no fresh vegetables or fruit, though the GP diet conforms to the 2800 +/- 200 calories per day these calories are primarily based on carbohydrates, frozen vegetables, canned fruit in syrup and salad once a week. Among all the medication that are issued for the above medical problems, one of the most prevalent is Colace and/or some other type of laxitive, fiber. Because a good portion of the inmate population suffer from chronic constipation. Therefore, Director Ryan is responsible directly for issuing a GP diet that has increased inmate related health issues and increased medical expenditures for inmates, which is contrary to the penal interest of Arizona Department of Corrections. Director Ryan is directly responsible for the medical issues that Mercado has suffered because of the GP diet.</u>

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   <u>Insufficient nutrition and preventable medical surgerys and infliction of unnecessary pain</u>

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.
<u>Direct Charles Ryan acted under color of state law ARS § 31-201.01(D)</u>

5

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. Declaratory relief against all Defendants;
2. Preliminary and permanent injunctive relief against the ADOC Defendant; and
3. Award Mercado against WellPath/Correct Care Solutions and the Nurse Practitioner, Jointly and Severally, in the following amounts;
   a. Compensatory damages: $670,000; and
   b. Punitive damages: $5,360,000;
4. Filing Fees, cost, and any and all other relief that Court Finds to be Just.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2019
DATE

/SIGNATURE OF PLAINTIFF

Phillip J McMullen #192907
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.