Richard Mercado #270031
Name and Prisoner/Booking Number

ASPC Kingman/Huachuca unit
Place of Confinement

Po Box 6639
Mailing Address

Kingman Az 86402
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

```
FILED ____ LODGED
RECEIVED ____ COPY

    DEC 02 2019

CLERK U S DISTRICT COURT
  DISTRICT OF ARIZONA
BY_____DEPUTY
```

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Richard Mercado,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Stephanie Herrick,
(Full Name of Defendant)

(2) Charles Ryan,

(3) Correct Care Solutions/Wellpath,

(4) _____,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-18-08242-PCT-SPL (BSR)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☐ First Amended Complaint
☒ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☒ Other: United States Constitutional Amendment VIII,XIV, ARS § 1-201

2. Institution/city where violation occurred: ASPC Kingman/Huachuca Unit

Revised 3/11/16                              1

**550/555**

Original Copy

## B. DEFENDANTS

1. Name of first Defendant: _Stephanie Herrick_. The first Defendant is employed as: _Nurse Practitioner ep employed by CCS/Wellpath_ at _Huachuca unit, ASPC Kingman_.
    (Position and Title) (Institution)

2. Name of second Defendant: _Charles Ryan ("ADOC Director)_. The second Defendant is employed as: as: _Director_ at _Arizona Department of Correction (ADOC)_.
    (Position and Title) (Institution)

3. Name of third Defendant: _Correct Care Solutions / WellPath_. The third Defendant is employed as: _Inmate Health Care Provider_ at _Huachuca unit, ASPC Kingman_.
    (Position and Title) (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as: _____ at _____.
    (Position and Title) (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☐ Yes   ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

    a. First prior lawsuit:
        1. Parties: _____ v. _____
        2. Court and case number: _____.
        3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

    b. Second prior lawsuit:
        1. Parties: _____ v. _____
        2. Court and case number: _____.
        3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

    c. Third prior lawsuit:
        1. Parties: _____ v. _____
        2. Court and case number: _____.
        3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: 1. Common law duty to serve with adequacy of rendition. U.S. Const. amend. VII; Munn v. Illinois, 94 US 113, 124 33(1876); Travaini v. Maricopa County, 450 P2d 1021-23 (App 1969). 2. Freedom from Cruel and Unusual punishment (and Equal protection and due process of law) U.S. Const. VIII XIV amend.

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1¶. From January 1, 2014 through December 14, 2015, Mercado was in ADOC custody at the Red Rock Correctional Center (Red Rock) (Richard Mercado, DOC #270031 plaintiff ("Mercado"), was in custody at the Red Rock Correctional Center (ADOC) ("Red Rock"). On November 3, 2014, Richard Mercado #270031 (Mercado) (Mercado) was admitted to the Banner Casa Grande Medical Center. The following history and physical authored that day by attending physician Dr. Ali Eskander related that Mercado presented with "acute renal failure and small bowel obstruction", along with "[m]ultiple innumerable hepatic cysts and (a) few renal cortical cysts, noted quite numerous for this patient's young age [of 26], questionable polycystic kidney disease." On November 4, 2014, Mercado underwent bowel obstruction surgery, and the final written report concerning Mercado's care written that day by Dr. Oliver Shelksohm included a definite diagnosis of "[p]olycystic liver and kidney disease."

   2¶. On November 12, 2014, Mercado was transported to receive an urgent follow-up consultation. The resulting report stated inter alia: "May have double portions [of] food & also [a] high fiber diet." Mercado developed post-surgical constipation on or about December 4, 2014, After Mercado (and) was transported for an examination by Dr. Kazi Nadeem on December 16, 2014, Dr. Nadeem produced a written progress note that related Mercado's account of his recovery: "He did well until 2 weeks ago, he (then) developed constipation 2 weeks ago with abdominal cramps. He has to force defecate. He tried [ ] high fiber supplement with no relief." Dr. Nadeem responded by prescribing Miralax, a polyethelene glycol-based medication, which Mercado was to take daily.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   1). The unnecessary and wanton infliction of pain brought on by a preventable surgery.
   2) Psychological anguish and pain

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

   Nurse Practioner acted under color of law (state) ARS § 31-201.01(D)

3¶. Dr. Nadeem's prescription ~~was not to~~ (can not) be interpreted as a long-term solution ~~to~~ for Mercado's chronic constipation. Why? The answer can be found in the online version of the warning label for Miralax, which Mercado later obtained a copy of: "Also do not use this medication for more than 2 weeks... Extended use or overuse may result in dependence on laxatives and chronic constipation." The label also carries the following caution that is noteworthy due to Mercado's polycystic kidney disease: "Before using this medication, tell your doctor or pharmacist your medical history, especially of:... kidney disease." Finally, the label provides a suggestion regarding the prevention of constipation: "To prevent constipation, remember to exercise regularly, drink adequate fluids, and eat fiber-rich foods such as bran, whole grain[s], fresh fruits, and vegetables." Between the Miralax drug label and the November 12, 2014, consultation report, supra at par 15, the message was clear: Mercado needed to be prescribed a high-fiber diet. But Mercado was facing an unexpected problem: ~~ADC~~ (ADOC) does not offer a standardized high-fiber diet. Instead, ~~ADC~~ (ADOC) offers several other medical diets, including, inter alia: (1) renal dialysis; and (2) allergy. The problem with ~~ADC's~~ (ADOC's) medical diets is that as a general rule, they are modified versions of the ~~Menu~~ (General population Menu) - which itself is unhealthy. See Part II, infra.

4¶. Mercado's high-fiber diet would therefore need to be created from scratch. But under ~~ADC~~ (ADOC) policies, if a medical provider seeks to order a diet that is "not already approved in the Diet Manual," "[t]he ordering provider will forward a request... to the Medical Program Manager", that includes a "[d]escription of the desired diet." ~~ADC~~ (ADOC) Health Services Technical Manual, Ch. 7 §1.3, subdiv 7.0, 7.1. What is more, such a diet would need to have an attractive cost profile, for the ~~ADC~~ (ADOC) Director has a history of sacrificing his food service budget in order to meet fiscal targets. Eg. Olmos, supra (Doc 2-6 at CBD) (notifying inmates of budget-related food service changes eff. April 1, 2010). Within this governmental red tape existed a golden opportunity: to craft a high-fiber diet that adopts the USDA Food Patterns,[4] see Guidelines at 79-80 (7d 2010), while also eliminating the unhealthy, processed foods that form the backbone of the Menu. With the permission of the Red Rock medical staff, Mercado teamed up with a fellow inmate to create a six week cycle menu that was founded upon the healthiest items served on: (1) the menu; (2) the renal dialysis and allergy medical diets; (3) the kosher and vegan religious diets.

---

[4] Renamed the "Healthy US-Style Eating Pattern" Guidelines at 79-82 (8d 2015)

54. This creative process took into consideration the following five factors:

First. Several years ago, Mercado's mother died after losing her battle with metastatic liver cancer. This close family history, coupled with Mercado's chronic constipation, concerned him greatly, for according to WebMD (http://www.webmd.com/digestive-disorders/features/chronic-constipation-facts-vs-myths?page=5, accessed on March 20, 2015) "chronic constipation may be an early symptom of serious problems such as colon cancer." To make matters worse, the menu itself contains two different types of carcinogens. The most widely known of the two is the saccharin-containing Menu item known as the "beverage", which comes as drink mix packets that are served via weekday sack lunches. See Olmos, supra (Doc 2-6 at C81-C87). The other carcinogen is the Menu's chief animal protein source: processed poultry provided in the forms of luncheon meat and ground chicken. This dangerous food continues to be served despite the release of a well-publicized study led by the American Institute for Cancer Research ("AICR"), highlighting the shocking results of its groundbreaking expert report entitled "Food, Nutrition, Physical Activity and the Prevention of Cancer," the AICR web site (http://preventcancer.aicr.org/site/News2?page=NewsArticle&id=15642&news_iv_ctrl=0&abbr=pr_, access date unknown) declared the following warning: "On the subject of processed meat (hot dog) every 50 gram serving of processed meat (roughly equivalent to 1 hot dog) eaten per day increases colorectal cancer risk by 21 percent."

Second. The Guidelines unequivocally declare that an unhealthy diet - like the Menu - increases a person's risk for cancer, obesity, heart disease, hypertension, diabetes, and osteoperosis. Guidelines at 3, 19 (7d 2010); Guidelines at 2-3 (8d 2015).

Third. In view of the diagnosis of polycystic kidney disease, Mercado took it upon himself to research the treatment options for his cortical cysts. According to Med-Health.net, (http://www.med-health.net/Cortical-Cyst.html, accessed on April 28, 2015) two "common natural remedies [that] have been shown to work" are "avoid[ing]... processed foods" and "[f]ollowing a low-sodium diet."

Fourth. On June 3, 2015, Red Rock Medical Provider Roy Montgomery, P.A. ("Montgomery") saw Mercado in connection with "[h]istory of polycystic kidney disease and acute... kidney disease." Progress Note Roy Montgomery PA date June 3, 2015 at 2. When he broached the subject of nutrition, Montgomery counsel Mercado to "lower sugar

carbohydrate intake; eat green leafy vegetable." Id. This was an ironic piece of advice, for not only is the menu littered with sugar and other empty carbohydrates, it contains almost no dark-green leafy vegetables. See Part II, infra.

Fifth. Several menu items (e.g., beverage, pudding, gelatin) are sweetened with aspartame, an artificial sweetener that, inter alia, compromises the immune system and negatively affects the central nervous system. Olmos, supra (Doc. 2-6 at C87-C91).

6¶. As a prisoner who has seen the inside of ADC's (ADOC's) ossified bureaucracy at work, Mercado and his associate knew that Dr. Olsen would need to give the Medical Program Manager overwhelming evidence that would justify the approval of their proposed diet. To that end, Mercado and his friend crafted an Inmate Letter addressed to Dr. Olsen, that, within the more than 150 pages of text and attachments, contained many important aspects that included the following: (1) relevant portions of the Guidelines (7d 2010); (2) an excerpt from the medical record of Mercado' mother, which explicitly describes her terminal diagnosis; (3) copies of the Internet material referenced in pars 21 and 23, supra; (4) Montgomery's Progress Note referred to in par 24(5) supra; (5) copies of the aspartame-related literature found at Olmos, supra, at C-88-C91; and (6) breakdowns of both the proposed high-fiber diet and the then-current edition of the Menu that laid out how each one stacked up against the daily and weekly recommended intakes of the U.S.D.A. Food Patterns at the 2800-calor level.

7¶. On December 8, 2015, Mercado was ready to present his completed Inmate letter to Dr. Olsen. Unfortunately, that was not possible, for Mercado's Red Rock housing unit was locked down in preparation for the mass transfer of prisoners to Huachuca Unit. On the morning of December 15, 2015, not long before he left his housing unit to be transferred, Mercado delivered the inmate letter addressed to Dr. Olsen to a Red Rock nurse for placement into his medical file with the assumption that it would be acted upon by staff of the Corporation (CCS/WellPath) after his arrival at Huachuca unit.

8¶. On December 17, 2015, Mercado submitted an HNR to the ~~corporation~~ (CCS/Wellpath) that made the following request: "I would like to talk with a (Dr. or MD) regarding a diet Plan to help relief [sic] with my Chronic Constipation." ~~Corporation~~ (CCS/Wellpath) nurse Perkins adjudicated the HNR with the following response: "There is not a diet plan for constipation. Increase your water intake re HNR if you are in need of alternative relief options". On December 24, 2015, Mercado sent the following follow-up request to the ~~Corporation~~ (CCS/Wellpath): "I would like to talk with a Dr. about a Diet, regarding my past medical history of bowel obstruction". A ~~Corporation~~ (CCS/Wellpath) nurse, T. Gigandet, responded on December 28, 2015 by scheduling Mercado to be seen by the Nurse Practitioner.

9¶. Mercado received notice that he would be seen by the Nurse Practitioner on January 22, 2016. Out of an abundance of caution, Mercado presented the Nurse Practitioner with a copy of the inmate letter he had addressed to Dr. Olsen - but with the date of the visit changed and the name of the recipient left blank - and briefly explained the rationale behind it. The nurse practitioner accepted the inmate letter, wrote her name in the area of the form designated for the recipient, and proceeded to skim through its contents. The nurse practitioner gave Mercado's proposed high-fiber diet tentative approval within her verbal response, and closed by assuring Mercado she would contact "the dietition" and follow up with him within two weeks. When the Nurse Practitioner's time frame lapsed, Mercado submitted a follow-up HNR on February 10, 2016. ~~Corporation~~ (CCS/Wellpath) nurse Perkins issued a response dated February 11, 2016, that directed Mercado to effectively be patient because he "will be informed soon" regarding the issue.

10¶. On March 14, 2016, Mercado submitted an HNR to the Nurse Practitioner seeking an update on his diet, and closed with the following: "Thank you for you[r] time[,] I am worried". On March 18, 2016, the Nurse Practitioner met with Mercado, and told him that she hoped to have the issue resolved soon. On the morning of March 18, 2016, before his appointment with the Nurse Practitioner later that same day, Mercado submitted an HNR that asked to speak with the Nurse Practitioner regarding his diet. ~~Corporation~~ (CCS/Wellpath) nurse T. Gigandet

scheduled Mercado to be seen by the Nurse Practitioner on April 5, 2016 according to the HNR response dated March 20, 2016.

11¶. At some point in March 2016, Mercado submitted an HNR to the ~~Corporation~~ (CCS/wellpath) in order to refill ~~his~~ his prescription for Miralax. On March 28, 2016, the ~~Corporation's~~ (CCS/wellpath's) pharmacy staff issued the following response: "No order for Meralax." On March 28, 2016, Mercado submitted an HNR to renew the prescription for Meralax. A ~~Corporation~~ (CCS/wellpath) nurse responded on March 29, 2016 by scheduling Mercado to be triaged by the nurse[s] line, and added the following comment: "You have an old Rx from a previous facility. 'Meralax' is an non-formulary drug here." On April 5, 2016, Mercado submitted an HNR requesting to be seen by the Nurse Practitioner regarding his diet, and closed by stating the obvious: "I have been waiting for a long time." The Nurse Practitioner met with Mercado on the same day, but provided Mercado with nothing to indicate that the issue had been completely resolved aside from the contention that a high-fiber diet had been approved.

12¶. The private prison staff that operates Huachuca unit as agents of the ~~ADC~~ (A.D.O.C.) Director have a habit of rushing inmates to eat via two methods: (1) packing the dining halls to capacity while also adding prisoners to the serving line queue, thereby exerting internal pressure among the inmates themselves to compel each other to eat quickly so that the persons who are streaming in will have a place to sit and eat; and (2) once the last tray of a meal has been served, staff will normally give prisoners ten or fifteen minutes to finish their meal before ordering them to leave the dining halls. In view of the fact that any new high-fiber diet would include various hard raw vegetables (eg., carrots, celery, etc), this dining environment was certain to be problematic for Mercado for two related reasons. First and foremost, Mercado is missing so many teeth that he must be allowed to soften the raw vegetables by cooking them in a microwave oven located inside his housing unit. Second, Mercado's digestive problems are aggravated if he is compelled to eat too fast using what teeth he has to chew with. At bottom, Mercado foresaw the need to be able to take part or all of each meal out of the dining hall and back to his housing unit - an act that is generally not permitted at ~~ADC~~ (A.D.O.C.) facilities, with the exception of sack lunches

and select special circumstances not relevant here. This type of medical accomodation is available through the [request][and] issuance of a Special Needs Order ("SNO") by the Corporation (CCS/wellpath), for the SNO is an ADC A.D.O.C. form used by the ADC (A.D.O.C.) Director's health care contractors to prevent prison security and administration staff from interfering with the medically-necessary accomodation that is set forth within the SNO. With this in mind, Mercado submitted an HNR to the Corporation (CCS/wellpath) on April 7, 2016 requesting the issuance of "a SNO stating that I can take out from the kitchen to my housing [unit], my fresh fruit and vegetables [that will be part of the new high-fiber diet] for I can make soups out of it." Corporation (CCS/wellpath) nursing administrator E. Brown, RN., ADON. issued the following response on April 8, 2016: "This is not something medical can issue a SNO for." This statment was a falsehood, for Mercado later obtained such a SNO without any security-related problems connected to this medically-necessary accomodation.

134. As April 2016 began, Mercado was no longer able to regularly move his bowels, and when he did, it was a very painful experience. Since these symptoms were eerily reminiscent of his prior bowel obstruction, there was an urgent need to resolve this issue immediately before it was too late. Therefore, Mercado sumitted an HNR to the Corporation (CCS/wellpath) on April 8, 2016 begging its staff to speak to the staff of ADC's (A.D.O.C.'s) food service contractor, Trinity Services Group ("Trinity") in order to ensure that the service of his diet will not be delayed post-approval by the normal bureaucratic red tape. The emergent need was highlighted by the HNR's closing language: "So this is very important, because my life depens [sic] on it. Can you please Schedule me to see NP Herrick, Soon as you can." On April 9, 2016, Corporation (CCS/wellpath) staff reponded: "Received HNR/Scheduled for chart review." On April 11, 2016, Mercado sent the Corporation (CCS/wellpath) an HNR that repeated the reqest made within his April 8, 2016 HNR. The Corporation (CCS/wellpath) staff issued the following response dated April 12, 2016: "You have been scheduled to see NP Herrick." On April 12, 2016, Mercado sent the following HNR to the Corporation (CCS/wellpath): "Yesterday I got back my HNR saying "You have been Scheduled to se [sic] NP Herrick[.]' Can you please tell me what date I am [sic] going to see NP Herrick?" On April 13, 2016, a Corporation

(CCS/wellpath) nurse replied: Received HNR / You will receive a pass for scheduled appointment."

14¶. Mercado proceeded to submitt follow-up HNR's to the ~~Corporation~~ (CCS/wellpath) bearing the following dates regarding his chronic constipation and the need for a therapudic diet: April 18, 2016, April 20, 2016, and May 12, 2016. The Nurse Practitioner responded via an ~~ADC~~ ADCC Health Services - Communique date June 14, 2016 that told Mercado that "your Low Residue diet has been approved." Appalled, Mercado sent the ~~Corporation~~ (CCS/wellpath) HNR's dated June 21, 2016 and July 1, 2016, which stated that (1) he was constipate; (2) his stool was hard and bloody; and (3) he need a high-fiber therapudic diet. On July 8, 2016, Mercado was transported to have his abdomen imaged, which revealed that he was constipated. On August 2, 2016, Mercado sent ~~the Corporation~~ (CCS/wellpath) an HNR that stated, in relevant part: "Hi I have been Scheduled over a month to see NP Herrick regarding (1) my medical shoes, (2) what's going on with my High fiber Diet." ~~Corporation~~ (CCS/wellpath) nurse E. Jones returned the HNR with the following message dated August 3, 2016: Please use this form to describe only one problem or issue at a time."

15¶. On August 4, 2016, Mercado was admitted to the Kingman Regional Medical Center to undergo bowel obstruction surgery, and was discharged on August 8, 2016. After being returned to Huachuca Unit, Mercado did his best to obtain a therapudic diet to prevent a third bowel obstruction, but his efforts were in vain. Consequently, Mercado elected to start the grievance process by submitting a written complaint on September 7, 2016, which complained that, despite his presentation of a proposed high-fiber diet, the actions of ~~the Corporation~~ (CCS/wellpath) and the Nurse Practitioner led him to suffer the agony of a second bowel obstruction surgery, and he was at that time left with no therapudic diet at all. On September 12, 2016, Mercado had his written complaint responded to, which informed him that an alternative remedies anyway (DOC-1 at 26-27)

16¶. Under common law, the exclusive franchise given to the ~~Corporation~~ (CCS/wellpath) by the State to provide health care to Mercado and all other Huachuca Unit prisoner's that it give adequate rendition to Mercado in connection with the treatment and care for his serious

medical needs. ARS §§ 1-201, 31-201.01. The ~~Corporation~~ (CCS/Wellpath) has refused to discharge its duty to serve, for by its policies and customs, the ~~Corporation~~ (CCS/Wellpath) subjected Mercado to serious harm and injury by inadequate health care. The ~~Corporation~~ (CCS/Wellpath) failed to adequately screen and qualify its personnel for employment, and also failed ~~to~~ to train Huachuca Unit health unit staff - ~~including~~ including the Nurse Practitioner - regarding what procedures are and are not permitted in connection with the care of serious medical needs. To make matter worse, the ~~Corporation~~ (CCS/Wellpath)'s supervisory staff do not investigate the reported misconduct committed by their subordinates, thereby ignoring the need for training and allowing the continuation of the very conduct that further violated Mercado's legal rights secured by United States Constitution under the ~~Seventh Amendment~~ [Eighth and Fourteenth Amendments]. The ~~Corporation~~ (CCS/Wellpath) has been and is aware of all of the deprivations complained of in Count I, and has condoned such conduct.

17¶. By its policies and customs, ~~the Corporation~~ (CCS/Wellpath) subjected Mercado to serious harm and injury by inadequately health care provided under the color of state law. ARS § 31-201.01. The ~~Corporation~~ (CCS/Wellpath) failed to adequately screen and qualify its personnel for employment, and also failed to train Huachuca Unit health unit staff - including the Nurse Practitioner - regarding what procedures are and are not permitt in connection with the care of serious medical needs. To make matter worse, the ~~Corporation~~ (CCS/Wellpath)'s supervisory staff do not investigate the reported misconduct committed by their subordinates, thereby ignoring the need for training [or correction of staff conduct] and allowing the continuation of the very conduct [demonstrated herein] that futher violated Mercado's legal rights secured by the United States Constitution under the Eighth [and Fourteenth] Amendment[s]. The ~~Corporation~~ (CCS/Wellpath) has been and is aware of all of the deprivations complained of in Count I, and has condoned ~~or~~ [and/or] been deliberately to such conduct.

18¶. Under common law, the exclusive franchise given to the Nurse Practitioner by the State to provide health care to Mercado and other Huachuca Unit prisoner under the color of state law (by way of a contract between ~~ADC~~ (ADOC) and her employer, the ~~Corporation~~ [CCS/Wellpath]) required that she give adequate rendition to Mercado in the care of his serious medical needs.

I the months after his arrival at Huachuca Unit, Mercado repeatedly gave the Nurse Practitioner actual and constructive notice that his chronic constipation place upon her the obligation to give him an appropriate therapudic diet in order to treat his condition. The Nurse Practitioner refused to do so. Instead, the Nurse Practitioner knowingly permitted the unnecessary and wanton infliction of continuous pain upon Mercado to escalate, ultimately climaxing when ~~he~~ he had to undergo a second bowel obstruction surgery and post-operative recovery, which violated his legal rights secured by the United States Constitution under the ~~Seventh~~ [Eighth and Fourteenth] Amendment[s]. The Nurse Practitioner has been and is aware of all of the deprivations complained of in Count I.

19.¶. In the months after his arrival at Huachuca Unit, Mercado repeatedly gave the Nurse Practitioner actual and constructive notice that his chronic constipation place upon her the obligation to provide him with an appropriate therapudic diet in order to treat his condition. The Nurse Practitioner, acting under the color of state law (by way of a contract between ~~ADC~~ (A.D.O.C) and her employer, ~~the Corporation~~ (CCS/wellpath)), refused to do so. The Nurse Practitioner knowingly permitted the unnecessary and wanton infliction of pain upon Mercado to escalate, ultimately climaxing when he had no other choice but to undergo a second bowel obstruction surgery and post-operative recovery, which violated his legal rights secured by the United States Constitution under the Eighth [and Fourteenth] Amendment[s]. The Nurse Practitioner has been and is aware of all of the deprivations complained of in Count I, and acted with deliberate indifference to Mercado's serious medical needs

20.¶. [The aforementioned medical information was part of Mercado's perment A.D.O.C. medical file, which was transfered to Huachuca Unit from Red Rock Unit on December 15, 2015, and these medical files/records of Mercado's preexisting chronic medical condition was available for review, had CCS/wellpath staff taken the time to review Mercado's Medical files/records CCS/wellpath has a established history of practices, policy, and customs of permitting its medical staffs, failure of review medical files/records for preexisting conditions, canceling medication without cause, review or replacement, deviating from sound medical practices and and delaying necessary medical treatment of inmates under their medical care.]

## COUNT II

1. State the constitutional or other federal civil right that was violated: 1. Common law duty to serve with Adequacy of nutrition. US Const. amend. VII; Munn, Traversini, supra. 2. Freedom from cruel and unusual punishment U.S. Const. amends. VIII, XIV; Graves v. Arpaio 2008 WL 469970 at 42-46 (D. Ariz. 2008), aff'd 623 F.3d 1043, 1050-57 (9th Cir. 2010)

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Adequate Nutrition

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

21.¶ Poor quality eating patterns are directly related to preventable chronic diseases that cost this country hundreds of billions of dollars annually. Guidelines at viii (8th ed. 2015). Hence, the Guidelines are "an essential resource for health professionals and policymakers as they design and implement food and nutrition programs that feed the American people, such as USDA's National School Lunch Program and School Breakfast Program." Id. (emphasis added) The Guidelines recognize the holistic approach that must be taken with nutrition: "The components of the eating pattern can have interactive and potentially cumulative effects on health." Id. at xi. "An underlying premise of the Dietary Guidelines is that nutritional needs should be met from foods." Id. at xiv.

22.¶ In order to help ADC staff fulfill the written promise that the Menu meets the requirements set forth in the Guidelines, see Manual at 14, the USDA has produced the Health US-Style Eating Pattern: Recommended Amounts of Food from Each Food Group at 12 Calorie Levels ("Pattern") (formerly named USDA Food Pattern in the 2010 ed. of the Guidelines). Id. at 79-82. In light of the fact that the Menu serves 2,900 (+/-200) calories to Mercado each day, Manual at 14, it would be expected to meet the Pattern at the 2800 calorie level. It does not, which is demonstrated by examining Week 6 of the menu (eff. 12-3-18). According to the Pattern, Mercado should be receiving three cups-equivalents of dairy each day. (Guidelines at 81-82 (8th ed. 2015). Mercado is served one cup of milk for breakfast on five days (Monday, Wednesday, Thursday, Saturday and Sunday), see Olmos (Doc 2-6 at C100) (milk carton with nutrition panel), with no other real dairy products being served. The problems with the menu continues with an examination of the proteins food group.

23.¶ Mercado should be served ten ounces of seafood per week because "[S]eafood provides the most vitamin B12 and vitamin D, in addition to almost all of the polyunsaturated omega-3 fatty acids eicosapentaenoic acid (EPA) and docosahexaenoic acid (DHA)." Guidelines at 23, 81-82. The Menu eliminated all seafood over a decade ago.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
1. Insufficient nutrition spanning several years
2. Being compelled to subsidize inadequate nutrition via purchases of food from inmate stores
3. Medical health issues from inadequate nutrition and unbalanced diet.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

Olmos, supra, at C66-C71 (Menu eff. Sept 18, 2008).

24. ¶ The issues surrounding the vegetable food group are also quite alarming. The dark-green vegetable sub-group includes broccoli, spinach, romaine lettuce, kale, and collard, turnip, and mustard greens, and Mercado should be served 2.5 cup-equivalents per week. Guidelines at 80-81 (8th ed. 2015). Sadly no Menu items contains dark-green vegetables in any meaningful amount.

25. ¶ A similar finding is to be had concerning the red and orange vegetables sub-group (e.g. tomatoes, red pepper, carrots, sweet potatoes, winter squash, pumpkin, etc.), which Mercado should be fed seven cup-equivalents per week. Id. The Menu serves only one cup of cooked carrots in the form of one-half cup servings each on Thursday and Sunday.

26. ¶ The picture is no different with the fruit food group, for despite the recommendation that the Menu serve Mercado 2.5 cup-equivalents of fruit every day, he is being provided only a half cup-equivalent of canned fruit with each weekend breakfast meal. Id.

27. ¶ On the other hand, the Menu is completely unbalanced when it comes to grains food group. While the Guidelines recommend an intake of five ounce-equivalents each of whole grains and refined grains, it emphasizes the following: "Healthy eating patterns include whole grains and limit the intake of refined grains and products made with refined grains, especially those high in saturated fats, added sugars, and/or sodium, such as cookies, cakes, and some snack foods." Id. at 22, 80, and 82. This warning has not been applied to the Menu, for the grains provided to Mercado are almost entirely made up of refined grains (e.g. breads, tortillas, rice, cake, cookies, pancakes, pasta, etc.)

28. ¶ If the foregoing were not enough, the Menu does not serve lunch on weekends and selected holidays (e.g. Thanksgiving Day, Christmas, New Year's Day, etc.) - which is a long-standing feature of the Menu. Olmos supra. The foregoing pattern of malnutrition that has been imposed upon Mercado is found throughout the six week Menu cycle, and is a part of a pattern that has last more than ten years, Olmos, supra, leaving Mercado little choice but to supplement his diet with purchases from Ryan's for-profit inmate store. ARS § 41-1604.02; Laws 2004, Ch 281 § 5 ("It is the intent of the legislature in section 41-1604.02... to increase the profitability of the state inmate stores while maintaining order within the inmate

population"); Joint Legislative Budget Committee, FY 2019 Baseline 129 (January 2018) (in Fiscal Year 2017, the Inmate Store Proceeds Fun expended $5,633,600, leaving a year-end fund balance of $3,882,700).

29.¶. On May 22, 2018, Mercado submitted a grievance under case no. M63-098-018 that put ADC officials on notice of the "glaringly obvious nutrition imbalances" in the food groups and sub-groups referenced, supra. On June 15, 2018, the Huachuca Unit Deputy Warden wrote a response to the grievance that did not address the issues at all:

> "... The ADC standard menu provides the recommended Daily Allowance for calories, protein, ten vitamins and six minerals, as required by the Food and Nutrition Board and the national Academy of Sciences - National Research Council. The menu meets the minimum standards of 2800 +/- 200/day calories, 63 grams of protein per day, 676 grams of fat per week, average 25 grams of dietary fiber per day, 35 grams of sodium per week and 70 milligrams of iron per week ..."

30.¶. On June 22, 2018, Mercado file the following grievance appeal to ADC Director: "Repeating the ADC party line did nothing to address the nutritional deficiencies that I raised. Hence, this silence is [a] confession that the error is true. In re 1996 Nissan Sentra, 201 Ariz. 114 par. 7; Fontes v. Porter, 156 F.2d 956, 957 (9th Cir. 1946) ("Neither proof nor finding is requisite in respect to uncontested issues.")" On July 12, 2018, an ADC staffer responded to Mercado's grievance appeal on behalf of the office of the ADC Director by repeating the grievance reply issued by the Huachuca Unit Deputy Warden almost entirely in whole clothe. The ADC Director ~~and the ADC Health Director (collectively "the ADC Defendants")~~ act~~ed~~[s] in ~~their~~[his] offical capacities under ARS § 41-1604(A)(1)-(2), (B)(2)(d).

31.¶. ~~Under common law,~~ [T]he responsibilities entrusted to the ~~ADC Defendants~~ (Director) require[s] that ~~they~~ [he] structure the Menu in compliance with the Guidelines and the Pattern. By ~~their~~ [ADC] policies and custom, ~~the ADC Defendants~~ [as overseen and implemented by the ADC Director] subject[ed] Mercado to a substantial risk of serious harm and injury [when Director Ryan issued the general population diet (GP diet) its cost benefits may

have seemed beneficial to ADOC, but the cost saving to ADOC have been far outweighed by the cost expenditures in medical care for the inmates. Since the issuance of the GP diet, there has been a alarming increase in inmate health related issues that are directly linked to the GP diet; such as, (heart problems, high blood pressure, diabetes, Obesity, chronic constipation, bowel obstruction, and other medical condition). When inmates seek to receive medical treatment for the aforementioned medical issues, one of the first order medical provides is to tell the inmate to cut the carbohydrates from there diets and eat more fresh fruits and vegetables. The problem here is that the GP diet is 70-80% carbohydrates depending on the meal, medical staff knows this, but states, "I had to tell you this from a medical standing and no there is nothing I can do about the GP diet". Among all the medications issued to inmates for some of the above medical problems one of the most prevalant is Colace and/or some other type of fiber laxitive, the reason for this is that a large portion of the inmate population suffer from chronic constipation which directly link to the chow hall food or GP diet, this is even among new inmates. Therefore, ADC Director Ryan is responsible directly for approving/issueing a GP diet that has increased inmate health related issues thereby increasing medical expenditures to care for the inmate population. Which is contrary to the penal interest of the Arizona Department of Correction. Therefore Director Ryan is directly responsible for medical problems suffered by Mercado as they relate to the GP diet ~~]~~, due to inadequate nutrition. These polices and customs have been and continue to be implemented by the ADC ~~Defendants~~ [Director] and ~~their~~ [the] contractors, agents, officials, employees, and all persons acting in concert with ~~them~~ [his] directives, and are the proximate cause of the deprivation of Mercado's rights secured by the Unite States Constitution under the ~~Seventh~~ [Eighth and fourteenth] Amendment[s] and ARS § 1-201. The ADC ~~Defendants~~ [Director] ~~have~~ has been ~~and are~~ aware of all of the deprivations complained of in Count II, and ~~have~~ [has] condoned such conduct.

32¶. ~~By their~~ [The] policies and customs, the ADC ~~Defendants~~ [Director] subject[ed] Mercado to a substantial risk of serious harm and injury due to inadequate nutrition. These policies and customs have been and continue to be implemented by the ADC ~~Defendants~~ [Director] and ~~their~~ [the contractors, agents, officials, employee's, and all persons acting in concert with ~~them~~ [his derectives], and are the proximate cause of the ongoing deprivation of Mercado's rights secured by the United States Constitution under the Eighth [and Fourteenth] Amendments. The ADC ~~Defendants~~ [Director] ~~have~~ [has] been ~~and are~~ aware of all of the deprivation complained of in Count II, and ~~have~~ [has] condoned such conduct.

## COUNT III

1. State the constitutional or other federal civil right that was violated: <u>Right to be free from cruel and unusual punishment guaranteed by the eighth and fourteenth Amendments under the United States Constitution.</u>

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   33.¶ 1) Plaintiff is, and at all times pertinent to this action was, a prisoner in the Arizona Department of Corrections, Kingman complex, Huachuca unit, (Huachuca unit), at 4626 West English Drive, Golden Valley, Arizona 86401, P.O. Box 6639 Kingman, Arizona 86402. 2) Correct Care Solutions/Wellpath, (CCS/wellpath), failed to adequately screen and qualify medical personal for employment, failed to properly train medical personal, failed to provide medical instruments necessary for treatment, and has developed a established history of Practices, Policy, customs, and Procedures of permitting its medical staff to deviate from sound excepted medical practices, failure to review medical records for preexisting conditions, canceling medication without review of records, cause or replacement of medication, of the inmates under there medical care. 3) Medical on Huachuca unit routinely stop dispensing medication prescribed by Doctor's from other ADOC units, "stating that according to CCS/wellpath it is a non-formulary on Huachuca unit or when medication has been prescribed it will be delayed from being dispensed, in some case up to 12 weeks. The medication that is being delayed, is not aspirin, but ie high blood pressure, Heart, and pain medications"). These medication delays show a policy, and practice the clearly demonstrates, that prescription that was order for 1 year is only dispence for 10 months, and once you subtract delay from order to fill dates. This appears to a medication cost cutting procedure to save CCS/wellpath money, if inmate complain they are told to stop or there will not get the medication at all, or there or they are told a ticket will be issued. CCS/wellpath Medical staff on Huachuca unit routinely delay necessary procedure such as colonoscopys, hernia surgerys

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   1) The unnecessary and wanton delay in treatment that caused the infliction of pain brought on by a second bowel obstruction surgery that was preventable had CCS/wellpath medical staff not delayed treatment and issued Marcado's a high fiber diet. 2) Psychological anguish and pain.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count III?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.
Correct Care Solutions/wellpath acted under color of state law ARS § 31-201.01 (D)

5

34/M. After months of being ignored, Mercado went to treatment line complaining of severe abdominal pain, constipation, blood in his stool, (which he had sent HNR's to medical for months about these symptoms), CCS/wellpath medical staff was going to turn him away again until Mercado start vomiting on the floor of medical, only did staff send to the hospital, which resulted with Mercado having to undergo a second bowel obstruction surgery that could and should have been prevented. The delay of treatment on Huachuca unit is well documented; hernia's that are ignored, in one case an inmate had a hernia protruding from his belly the size of a tennis ball, and he still had to grieve medical to get treatment. Another inmate who has hernia in his groin that has grown so large that he can no longer work, and has been trying to get treatment since 2016, and though the hernia had been diagnosed on another unit, CCS/wellpaths Dr. Schmitt stated "the hernia did not exist and he did not care if it was part of the inmates medical file. In another case Dr Schmitt used brute force, a pair of scissor to remove a fiberglass cast, and unsterilized tweezer's and forcepts to remove surgical stapes, Dr Schmitt even laught during this torturous behavior about the amount pain he was causing the inmate

35/M. Mercado's preexisting chronic medical condition was available for review, in the files/records that had been transfered from Red Rock unit to Huachuca unit on December 15, 2015, and clearly would have shown CCS/wellpath's medical staff the a preexisting chronic medical condition existed if they had review his file/records and/or been trained to do so. CCS/wellpath has a established history of practices, policy and customs of failing to train, sceen and allow its medical staff to delay and/or deviate from sound medical practices, procedures of treatment and medical care of inmates. This indifference to the medical welfare of the inmates in CCS/wellpath's care is what led to the unnecessary and avoidable second obstructed bowel surgery that Mercardo under went, which caused him to endure unnecessary and preventable pain.

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1. Declaratory relief against all Defendants;
2. Preliminary and permanent injunctive relief against the ADOC Defendant; and
3. Award Mercado aga_____ WellPath/Correct Care Solutions and the Nurse Practitioner, Jointly and Severally, in the following amounts:
   a. Compensatory damages: $670,000; and
   b. Punitive damages: $5,360,000;
4. Filing fees, cost, and any and all other relief that Court Finds to be Just

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  NOV. 27. 2019
                    DATE

SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.